## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREA BASLI, Individually and on Behalf of All Others Similarly Situated,<br><br>                                   Plaintiffs,<br>          -against-<br><br>BANK OF AMERICA, N.A.,<br><br>                                   Defendant. | Civ. Action No:<br><br>JURY TRIAL DEMANDED<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Andrea Basil ("Plaintiff"), individually and on behalf of all other persons similarly situated by their attorneys, make the following allegations as follows:

## NATURE OF THE CASE

1.      This is a class action complaint brought by Plaintiff, individually, and on behalf of all other persons similarly situated, against BANK OF AMERICA, N.A. ("Bank of America" or "Defendant") under federal and state law including the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, the Homeowners Protection Act of 1998, 12 U.S.C. § 4901, *et seq.* ("HPA"), and New York consumer protection laws, including New York General Business Law § 349 *et. seq*., breach of contract, unjust enrichment and negligence seeking redress for the Defendant's illegal and fraudulent practices aimed at maximizing fees assessed on unsuspecting borrowers' accounts who qualify for cancellation of their Private Mortgage Insurance ("PMI").

2.      Specifically, the Defendant, in conjunction with the PMI company, purposely failed to provide borrowers with an annual written statement that sets forth their right to cancel their PMI and misrepresented to borrowers the amount of time the Defendant could continue to collect PMI after the loan qualified for PMI cancellation. As a result, both the lender, Defendant Bank of

- 1 -

America, and the PMI Company illegally gained additional monthly PMI fees from the Plaintiff Andrea Basli and Class Members, in some cases for over a year or more.

3.      Lenders like the Defendant require private mortgage insurance (PMI) for most borrowers who put down less than twenty (20) percent of the property's value as a down payment when purchasing a property. Lenders require PMI because it protects them in the event the borrower defaults.

4.       In an effort to stem lenders' abuses in terminating PMI, Congress passed the Homeowner's Protection Act of 1998, 12 U.S.C. § 4901, *et seq.* ("HPA"). The HPA establishes that servicer must automatically terminate PMI when the principal balance of the subject loan is scheduled to reach seventy-eight (78) percent of the original value of the property securing the loan ("Termination Date"). Further, the HPA also provides that a borrower may request cancellation of PMI, when when the principal balance on the mortgage declines to eighty (80) percent of the original value of the property ("Cancellation Date"). §§ 4901(2), 4902(a).

5.      The Defendant purports to be in compliance with the HPA when sending the required notifications to borrowers regarding the PMI cancellation and termination dates.

6.      Said statutorily mandated notifications are to be provided annually by the lenders when PMI is in place to provide borrowers a written statement of their rights under the HPA regarding PMI cancellation or termination ("Annual Disclosures"). § 4903(a)(3).

7.      The Defendant, as a mortgage servicer, profits from fees assessed against the mortgage accounts it services. Servicers, like the Defendant, can make tremendous profits from collection of PMI monthly fees. The Defendant's incentive, therefore, is to assess as many monthly PMI fees as possible, whether lawful or not, and to collect all outstanding fees and costs prior to applying borrowers' payments to interest and principal.

8.     While borrowers are unknowingly suffering from this fraudulent and deceptive scheme, the collection of unwarranted PMI fees generates immense revenues for Defendant.

9.     This action was brought by Plaintiff to stop Defendant's scheme and to recover the improper, deceptive, unnecessary, fictitious, false and unreasonable PMI fees charged to and paid by Plaintiff and putative Class Members.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 11 U.S.C. § 1332(d)(2) as various members of the Class are citizens of a state different from Defendant's state and the aggregate amount in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars.

11.     Further, this Court has jurisdiction over this matter under 18 U.S.C. §§ 1961, 1962 and 1964, 28 U.S.C. §§ 1331, 1332 and 1367.

12.     This Court has personal jurisdiction over the Defendant pursuant to 18 U.S.C. §§ 1965(b) and (d). In addition, this Court may exercise supplemental jurisdiction over the state law claims because the state and federal claims derive from a common nucleus of operative facts so that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

13.     Diversity jurisdiction is also conferred over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, § 7, 119 Stat. 13 ("CAFA"). Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated. 28 U.S.C. § 1332(d)(6).

14.     Venue is proper in this district pursuant to 18 U.S.C. § 1965(a), 28 U.S.C. § 1391, and 15 U.S.C. § 22 because the Defendant's contacts are sufficient to subject it to personal

jurisdiction in this District. Further, the Defendant is found, does business or transacts business within this District.

## THE PARTIES AND FACTUAL HISTORY

15.     Plaintiff, Andrea Basli, is an individual and citizen of the state of New York. She presently resides in the County of Putnam and had resided in said county during the class period. She is a consumer who purchased a home and obtained a residential mortgage from M&T Bank on September 1, 2009. The servicing rights to the subject mortgage were ultimately transferred to the Defendant on or about December 2009.

16.     The Plaintiff's subject mortgage loan required PMI at its inception. As such, the Plaintiff Andrea Basli was required to execute a PMI disclosure form ("Disclosure") at the closing of the subject loan on September 1, 2009. (*See* Disclosure Form attached hereto and made apart hereof as Exhibit A).

17.     The PMI disclosure stated, *inter alia*, "...charges for the insurance are added to your loan payments. Under certain circumstances, federal law gives you the right to cancel PMI or requires PMI to automatically terminate." (Exhibit A).

18.     The Disclosure allowed for Borrower Requested Cancellation of PMI as follows: "You have a right to request that PMI be cancelled on or after the following dates: 1. The date the principle balance of your loan is *scheduled* to reach 80% of the original value of the property. This date is October 1, 2016… 2. The date the principle balance *actually* reaches 80% of the original value of the property." *Id.* (emphasis in the original). As such, the initial Cancellation Date of October 1, 2016 was seven years after the closing of the loan.

19.      The Disclosure further provided that:

> "PMI will only be cancelled if all of the following conditions are
> satisfied: 1. you submit a written request for cancellation; 2. you

> have good payment history; 3. you are current on the payments
> required by your loan; and 4. we receive, if requested and at your
> expense, evidence satisfactory to the holder of your loan that the
> value of the property has not declined below its original value, and
> certification that there were no subordinate liens on the property."

*Id.* On the Cancellation Date of October 1, 2016, the Plaintiff qualified for PMI cancellation by

meeting *all* of the above requirements.

20.     The Disclosure also provided for *automatic* termination of PMI on December 1,

2017, which was *fourteen months* after the borrower triggered Cancellation Date of October 1,

2016. *Id.*

21.     The Defendant failed, however, to provide the Plaintiff with any statutorily required

annual disclosures to notify her of the status of the PMI. (*See* Plaintiff's Affidavit attached hereto

and incorporated herein at ¶ 4). While the Plaintiff did receive annual escrow disclosures from the

Defendant, the required PMI disclosures were not included. (*See* Annual Escrow Statements

attached hereto and made apart hereof as Exhibit B).

22.     Had the Plaintiff received the statutorily required notice she would have sent a

written request for cancellation along with the required valuation documentation on or about the

Cancellation Date of October 1, 2016 as she qualified for cancellation of the PMI. (*See* Pl.

Affidavit at ¶ 5).

23.     Defendant, Bank of America, N.A., has its principal office located at Bank of

America Corporate Center, 100 North Tryon, Charlotte NC 28255 and it services residential

mortgage loans in New York and throughout the United States, including loans within this District.

## FACTUAL ALLEGATIONS

24.     This action stems from an unjust scheme undertaken by the Defendant to maximize

profit by failing to notify the Plaintiff and Class Members about their option to cancel their PMI

when their loan was eligible. As a result, the Defendant collected massive amounts of monthly

PMI fees that were unearned, fraudulent, illegal, excessive, repetitive, unfair, deceptive, false, and fictitious by charging them to unsuspecting borrowers' accounts.

25.     Rather than earn income from the interest on these loans, financial institutions like the Defendant are paid a fee for their loan administration services and they retain as profits additional fees generated such as a portion of the PMI fees collected with the balance going to the PMI company.

26.     As housing prices increased in the marketplace (and the corresponding down payment amounts increased), saving for enough of a down payment became difficult for many perspective homeowners and as a result, they put less than twenty (20) percent down on their home purchases.  Lenders addressed the risk of less than eighty (80) percent loan to value by instituting PMI to mitigate loss in case of foreclosure.

27.     The lender is able to make loans in excess of eighty (80) percent of the property's value by receiving insurance from the PMI Company which protects the lender if the borrower defaults on the loan. While the lender is the beneficiary of the PMI, the borrower pays for the insurance though the addition of monthly premiums to the borrower's monthly mortgage payment.

28.     As the PMI is arranged directly by the lender, the borrowers have no opportunity to choose their PMI Company. Further, the terms and conditions of the insurance policy, as well as the cost of the policy, are determined by the lender and the provider of PMI, rather than negotiated between the borrower and the provider of the PMI.

29.     The HPA mandates that while PMI is in place on the borrower's loan, the lender and/or mortgage servicer must provide annual written statements of the borrower's rights under HPA regarding the PMI cancellation or termination. 12 U.S.C. § 4903(a)(3).

30.     Once the borrower's loan balance reaches eighty percent or more of the property value then PMI is no longer needed and should be cancelled automatically by the lender.

31.     Historically, lenders or servicers such as Bank of America had varied policies and procedures used for cancelling or terminating PMI coverage when borrowers' loans reached eighty (80) percent equity. However, borrowers had little recourse when lenders such as the Defendant refused to cancel PMI.

32.     As such, Congress codified the Homeowners Protection Act ("HPA") under 12 U.S.C. § 4901, *et seq.* that governs when private mortgage insurance must be terminated or cancelled and when the lender must send notices to the borrower. The HPA is largely a disclosure statute mandating disclosure to inform borrowers when PMI can be cancelled and when it must be automatically terminated, as well as, requiring annual notices to the borrower of same.

33.     The implementation of the HPA was meant to finally provide consumers with the protection they deserved from unscrupulous lenders such as Defendant Bank of America.

34.     Generally, the HPA requires termination of PMI, on the date when the principal balance of the loan is first scheduled to reach seventy-eight (78) percent of the Original Value of the property securing the loan provided the mortgagor is current on the payments required under the mortgage. 12 U.S.C. §§ 4901(18), 4902(b).

35.     The HPA also provides that a mortgagor may request cancellation of PMI, on, or at any time after, the date when the principal balance on the mortgage declines to eighty (80) percent of the Original Value of the property. 12 U.S.C. §§ 4901(2), 4902(a).

36.     Borrowers such as the Plaintiff and eligible Class members are provided with PMI disclosures while at the closing table when purchasing property along with a large stack of loan documents which they rarely read or understand.

37.     The lender along with the PMI company knew up front that the Plaintiff and Class Members would very rarely remember to request PMI cancellation seven years or so after closing. As such, the HPA was enacted to, *inter alia*, rectify the policy of lenders failing to notify borrowers that they may cancel their PMI when the subject loans are eligible for cancellation and then continuing to collect unnecessary and additional PMI for many months.

38.     The Defendant along with the PMI company purposely failed to provide such annual disclosures to the Plaintiff.

39.     As a result, the Defendant continued to collect PMI fees from the unsuspecting Plaintiff for fourteen months after the Plaintiff qualified to cancel her PMI insurance. Had the Defendant provided the statutorily required notice, the Plaintiff would have been able to terminate PMI and save over fourteen months of unnecessary PMI payments.

40.     Neither Bank of America nor the PMI Company refunded these ill-gotten gains to the Plaintiff.

41.     The Plaintiff first discovered that this fraud had taken place in the early summer of 2019.

42.     The elementary nature of the PMI premiums themselves is further evidence that these fees are unnecessary, confer no discernible benefit on the lender, and serve no apparent purpose other than to generate revenue for Defendant and the PMI company after the equity in the property reaches eighty (80) percent.

43.     In fact, the Defendant knew that the PMI qualified for cancellation in October 2016, but purposely failed to notify the Plaintiff in order to continue to collect unnecessary and unwarranted monthly premiums. As the Defendant purposefully failed to notify that the PMI was

eligible for cancellation, the Plaintiff and the Class Members could not timely cancel their PMI insurance even though their loans qualified and the Defendant reaped the benefits.

44.     The Defendant then knowingly misrepresented these unreasonable, deceptive, false, and excessive PMI fees to the Plaintiff and the Class Members by portraying them as legitimate charges on the monthly mortgage statements as if the loans did not qualify for cancellation.

45.     The least sophisticated consumer would not remember to request cancellation seven (7) years or so after closing without a reminder from the current lender and would understand the PMI fees as represented by the Defendant on their mortgage statements to mean that the fees were legitimate and authorized by their contract or law. Meanwhile, the Defendant knew that PMI fees were false, deceptive, misleading, unreasonable, fictitious and excessive and not authorized by contract or law.

46.     Defendant colluded with the PMI Company to continue to charge monthly premiums well after the Plaintiff and Class Members had a right to cancel the insurance in order to increase their profits at the expense of unsuspecting borrowers such as the Plaintiff and Class Members.

47.     Both Defendant and the PMI Company profited handsomely from the scheme at the expense of the Plaintiff and the other Class Members.

48.     Due to the high volume of loans Defendant services, tens of thousands of borrowers are believed to be victims of this scheme. As a result of the PMI scheme, the Defendant has obtained Plaintiff's and the Class Members' money and increased their debt obligations without justification and contrary to applicable law.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff sues on her own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, as a class action on behalf of a nationwide class defined as all persons who were charged unnecessary PMI fees by Defendant after the borrowers had a right to cancel their PMI insurance.

50.     Excluded from the Class are Defendant, any entity in which a Defendant has a controlling interest or is a parent, or subsidiary of, or any entity that is controlled by Defendant, and Defendant's officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns.

51.     The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff does not know the exact size or identities of the proposed Class as such information is in the exclusive control of Defendant; however, Plaintiff believes that the Class is comprised of thousands of individuals who are geographically dispersed throughout the United States.

52.     All members of the Class have been subject to and affected by the same practices and policies described herein. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions include, but are not limited to, the following:

      a.  Whether the Defendant had a policy and practice of frequently charging persons unlawful, deceitful, false, fictitious and unreasonable PMI fees after the fees should have been cancelled;

      b.  Whether the Defendant failed to provide annual PMI disclosures and any other notifications of a right to cancel to its borrowers;

c.  Whether Defendant and the PMI company aided and abetted each other in furtherance of the unlawful acts alleged herein;

d.  Whether Defendant engaged in mail and wire fraud;

e.  Whether Defendant engaged in a pattern of racketeering activity;

f.  Whether the Defendant is an enterprise within the meaning of 11 U.S.C. § 1961(4);

g.  Whether Defendant conducted or participated in the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c);

h.  Whether Defendant's overt and/or predicate acts in furtherance of the aiding and abetting and/or direct acts in violation of 18 U.S.C. §§ 1962(a) and (c) proximately caused injury to the Plaintiff's and Class members' business or property;

i.  Whether Defendant violated 12 U.S.C. § 4901, *et seq.*;

j.  Whether the Defendant was unjustly enriched by its deceptive practices;

k.  Whether the Defendant committed fraud by charging for and collected PMI fees that it should not have been charged;

l.  Whether Defendant's unlawful, unfair, false, fictitious and deceptive practices harmed the Plaintiff and the Class;

m.  Whether the Court can enter a declaratory and injunctive relief; and

n.  The proper measure of damages.

53.  The claims of the named Plaintiff is typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that the Plaintiff and the other members of the Class are subject to the same wrongful policies and practices by the Defendant.

54.  The individually named Plaintiff will fairly and adequately represent the interests of the Class and has no interests antagonistic to the Class members. Further, she is are committed

to the vigorous prosecution of the Class' claims and have retained a firm qualified to pursue this litigation.

55.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual class members may lack the financial resources to vigorously prosecute a lawsuit against the Defendant. As such, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and with the unnecessary duplication of efforts and expense that numerous individual actions engender. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant. Furthermore, the adjudication of this action presents no unusual management difficulties.

56.     The Defendant has acted or refused to act on grounds generally applicable to the Class, making final declaratory or injunctive relief appropriate.

57.     Adequate notice to the proposed class can be achieved through the U.S. mail to the addresses of the Class members that are kept within Defendant's records. Notice can also be supplemented via publication.

## FIRST CAUSE OF ACTION

## Violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c))

58.     The Plaintiff repeats, reiterates and alleges each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

59.     In 18 U. S. C. §1964(c), RICO provides a private right of action to "[a]ny person injured in his business or property by reason of a violation," as pertinent here, of §1962(c).

60.     § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with [a qualifying] enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or **collection of unlawful debt**." (Emphasis added).

61.     Under RICO, "racketeering activity" is defined to include a wide variety of offenses enumerated as "predicate acts" in §1961 including, *inter alia,* mail and/or wire fraud.  §1961(1)(B).

62.     A person commits mail fraud whenever that person, having desired any scheme to defraud, uses the mail or any private or commercial carrier while executing that scheme. §1341. Any "mailing . . . incident to an essential part of the scheme . . . satisfies the mailing element," *Schmuck v. United States*, 489 U. S. 705, 712 (internal quotations omitted), even if the mailing "contain[s] no false information." *Id.* at 715.

63.     A person commits wire fraud whenever that person, having devised any scheme to defraud, transmits or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing that scheme. § 1343.

64.     Defendant engaged in two or more acts of mail and/or wire fraud within the past ten years.

### THE ENTERPRISE

65.     At all relevant times, the Defendant was a "person" within the meaning of RICO, 18 U.S.C. § 1961(3).

66.     RICO broadly defines an enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in

fact although not a legal entity." §1961(4).

67.     Defendant colluded with the PMI Company by providing borrowers a PMI disclosure at their closings regarding the right to cancel said PMI when specific percentage of equity is reached years in the future. The Defendant provides this disclosure at closing when borrowers were signing a massive stack of confusing loan documents that they most likely would not read or understand and would very rarely remember to cancel their PMI on a set date years in the future.

68.     The Defendant along with the PMI Company then purposely failed to notify the borrowers of their right to cancel or provide annual disclosures so that they could collect additional unnecessary PMI fees which are considered ill-gotten gains.

69.      Defendant, including its directors, employees and agents, along with the PMI company constitute an association-in-fact enterprise (the "Bank of America Enterprise"), as that terms is defined in § 1961(4), that engages in, and the activities of which affect, interstate commerce.

70.     The members of the Bank of America Enterprise are and have been associated through time and are and have been joined in the common purpose of maximizing their profits by charging unnecessary and repeated PMI fees to Plaintiffs and Class members during a time when the PMI should have been cancelled. Further the members of the Bank of America Enterprise function as a continuing unit as described within.

71.     The Defendant maintains an existence separate and distinct from the Bank of America Enterprise as well as participates in and are members and part of the Bank of America Enterprise.

72.     Defendant controls and operates the Bank of America Enterprise as it, *inter alia*, collects PMI fees from its borrowers after these fees qualified for cancellation without providing notice to the borrowers and distributes the PMI fees to the PMI Company after taking a percentage of those fees as profit.  These fees are automatically collected and mortgage statements are sent to the borrowers that are misleading as to the nature of the PMI charged fees as the PMI fees were eligible for cancellation.

73.     The Bank of America Enterprise's systematic linkage is shown through the contractual relationships, agreements, financial ties, and coordination of activities between Defendant and the PMI Company. The Defendant's automated computer system is a common communication network by which Defendant and the PMI Company share information. This common communication network is one of the tools that allowed the Defendant to charge the Plaintiff and Class members unreasonable, false, fraudulent, excessive and improper fees and to gain from the resulting profits.

74.     The Bank of America Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendant engages. This separate structure is exemplified by the conflicting nature of a mortgage servicer assessing unnecessary and false PMI fees when it is obligated to act under servicing guidelines.

**PREDICATE ACTS**

75.     Under RICO, "racketeering activity" is defined to include a wide variety of offenses enumerated as "predicate acts" in §1961 including, *inter alia*, mail (§ 1341) and/or wire fraud (§1343).  §1961(1)(B).

76.     Defendant has violated and continue to violate each of these laws to effectuate its scheme of assessing and collecting unnecessary and fictitious PMI fees on accounts of borrowers

who were subject to cancellation of those fees without providing notice to the borrowers.

77.     Additionally, the Defendant's conduct is unlawful under § 1341 and § 1343, as in furtherance of their scheme, the Defendant sought to and did aid and abet the others in violating the above laws.

78.     The Defendant used the mail in furtherance of their scheme to defraud borrowers whose loans are serviced by Defendant by obtaining money from borrowers using false and fraudulent pretenses.

79.     The Defendant utilized the United States mail, in violation of 18 U.S.C. § 1341, to send the Plaintiff and Class members mortgage statements, payoff demands, and other correspondence which showed charged fees for unnecessary and false PMI fees. Despite knowing such PMI fees were unnecessary and subject to cancellation, the Defendant purposely failed to notify the Plaintiffs and Class members that their PMI was eligible for cancellation. The Defendant also used the mail to accept payments including the monthly PMI fees in furtherance of its scheme through the mail.

80.     Further, in violation of 11 U.S.C. §1343, the Defendant transmitted and received by wire, *inter alia*, monthly mortgage statements, agreements, correspondence, wire transfers and transmitted or caused to be transmitted false statements over the telephone, facsimile, electronic mail and internet. These items included information or communications made which further or are necessary to effectuate the scheme. Under §§ 1341 and 1343, each of these acts constitute an act of wire or mail fraud.

81.     By issuing mortgage statements to the Plaintiff and Class Members, the Defendant represented to the Plaintiff and Class members that all amounts due on these statements were lawful, actual and reasonable charges. As such, the Defendant misrepresented to the Plaintiff and

Class members in their monthly mortgage statements that all fees, charges and amounts due were lawful, proper and legitimate.

82.     Further, the Defendant provided mortgage statements that showed PMI charges due when in fact they were subject to cancellation to deceive the borrowers as to the true nature of the PMI fees being charged.

83.     The fraudulent misrepresentations were material and were known to be material by the Defendant and the Plaintiff and the Class members relied upon the misrepresentations.

84.     When Defendant caused these statements and payment demands to be transmitted in mortgage statements, Defendant knew that the PMI fees qualified for cancellation and therefore, the corresponding fees were unreasonable, illegal, unnecessary, false and were not authorized by the terms of the mortgage contracts, Lender guidelines or applicable law.

85.     Defendant knew that it was generating substantial profit from its fraudulent scheme and that if the Plaintiff and Class members had been aware of the scheme they would have challenged said fees and would not have paid them.

86.     Furthermore, in some instances the Defendant induced and coerced members of the Class to enter into refinance agreements and loan modifications that caused these unwarranted fees to be refinanced into the principal owed to the Class' detriment and Defendant's profit.

87.     The Defendant was under an obligation by law to notify the Plaintiff and Class Members of their right to cancel, but purposely failed to do so in order to continue to collect unnecessary PMI fees. Thus, there was no reasonable justification to charge the borrowers the additional PMI fees other than to gouge the Plaintiff with illegal and inflated fees.

88.     As a direct and proximate cause of these predicate acts, the Plaintiff and Class Members were injured in their property. The Defendant's conduct, *inter alia*, inflated the amounts

that Plaintiff and the Class Members owe on their mortgage, caused Plaintiffs and the Class members to pay for excessive, false, and unlawful PMI fees, and may have caused Plaintiffs and member of the Class to incur other fees and charges that they would not have incurred otherwise such as late fees .

89.     Because this is a class action, and there were numerous acts of mail and wire fraud that were used to effectuate the scheme, it would be impracticable for Plaintiff to plead all details of the scheme with absolute particularity. Therefore, Plaintiff cannot plead the precise dates of all of Defendant's use of the U.S. mail and interstate wire facilities, and corresponding acts of mail and wire fraud, as this information cannot be alleged without access to Defendant's records, but in the Plaintiff's case, it is believed to be from October 1, 2016 through December 1, 2017 the period in which the PMI fees were subject to cancellation and were continued to be collected by the Defendant.

90.     Defendant either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and the Plaintiff and the Class members relied on the misrepresentations and omissions. As such, the Plaintiff and Class Members have been injured in their business or property by the Defendant's repeated evident acts of mail and wire fraud, and by its and its vendors' aiding and abetting each other's acts of mail and wire fraud.

## PATTERN OF RACKETEERING

91.     Based on the foregoing predicate acts, the Defendant has engaged in a "pattern of racketeering activity" as defined by 18 U.S.C § 1961(5).

92.     The numerous and repeated acts of racketeering activity were committed or aided and abetted in the commission of said acts by the Defendant along with the PMI Company.

93.     Each act of racketeering activity had a similar purpose, results, participants, methods of commission, and victims, including the Plaintiff and Class members.

94.     The acts of racketeering activity are interrelated and pose a threat of continued racketeering activity.

95.     As a direct and proximate result of these violations of 18 U.S.C. §§ 1962(c) and (d), Plaintiff and Class members have suffered substantial damages. Under 18 U.S.C. § 1964(c), the Defendant is liable to the Plaintiff and Class members for compensatory damages, treble damages, together with all costs of this action, plus reasonable attorney's fees as well as any other relief as authorized.

## SECOND CAUSE OF ACTION

## Violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(a))

96.     The Plaintiff repeats, reiterates and alleges each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

97.     Section 1962(a) of RICO provides that "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity…in which such person has participated as a principal within the meaning of § 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."

98.     As principals in an extensive pattern of racketeering activity the Defendant received income and such income is, directly or indirectly, reinvested to finance continuing racketeering activity and also in the operation of the Bank of America Enterprise.

99.     The Plaintiff and Class members have been injured in their business or property by the predicate acts which make up the Defendant's pattern of racketeering activity and by its

investment and reinvestment of said income to operate and continue the Bank of America Enterprise.

100.    The Plaintiff and Class members seek an award of compensatory damages, punitive damages, treble damages, together with all costs of this action, plus reasonable attorney's fees as well as any other relief as authorized.

## THIRD CAUSE OF ACTION

### Violation of 18 U.S.C. § 1962(d) By Conspiring to Violate 18 U.S.C. § 1962(a) and (c)

101.    The Plaintiff repeats, reiterates and alleges each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

102.    As contained herein, Defendant conspired to violate the provisions of 18 U.S.C. § 1962(a) and (c) in violation of 18 U.S.C. § 1962(d).

103.    In violation of 18 U.S.C. § 1962(d), the Defendant knowingly, willfully and unlawfully conspired to facilitate a scheme which included the operation or management of the Bank of America Enterprise through a pattern of racketing activity as alleged above.

104.    The Plaintiff and class members have been injured and continue to be injured in its business and property by Defendant's conspiracy in violation of 18 U.S.C. § 1962(d). The unlawful actions of the Defendant having directly, illegally and proximately caused and continue to cause injuries to the Plaintiff or their business or property.

105.    Specifically, the Plaintiff and Class members have been injured in their business or property in several ways, including paying unreasonable, fictitious and unwarranted PMI fees.

106.    The Plaintiff and Class members seek an award of compensatory damages, punitive damages, treble damages, together with all costs of this action, plus reasonable attorney's fees as well as any other relief as authorized.

## FOURTH CAUSE OF ACTION

## Violation of the Homeowner's Protection Action of 1998 , 12 U.S.C § 4901, *et seq.*

107.    The Plaintiff repeats, reiterates and alleges each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

108.    The Plaintiff brings this claim individually and on behalf on the members of the Class against the Defendant pursuant to HPA, 12 U.S.C. 4901, *et seq.*

109.    Plaintiff and Class Members are "mortgagors" as defined in 12 U.S.C. 4901(11) and the Defendant is a  "mortgagee" as defined in 12 U.S.C. 4901(10) and/or "servicer" as defined in 12 U.S.C. 4901(16).

110.    The HPA under 12 U.S.C. § 4903(a)(3) provides that the servicers must provide the borrowers with an annual written statement that sets forth the right of the borrower to cancel and terminate PMI along with the address and telephone number that the borrower may use to contact the servicer whether the borrower may cancel PMI.

111.    The Defendant violated 12 U.S.C. §4903(a)(3) by failing to provide required annual statements to the Plaintiff or Class Members as required by the HPA.

112.    As a result of the Defendant's conduct, Plaintiff and Class Members incurred damages. Plaintiff and members of the Class have been required to pay PMI past their termination dates due to the Defendant's failure to provide annual disclosures in violation of the HPA.

113.    The said violation was discovered by the Plaintiff on or about June of 2019.

114.    Based on the foregoing, the Plaintiffs and the Class members are entitled to actual and statutory damages of the lessor of five hundred thousand dollars ($500,000.00) or one percent of the Defendant's gross revenues whichever is less plus costs and reasonable attorney fees.

## FIFTH CAUSE OF ACTION

### Violation of the New York General Bus. Law §§ 349
### On Behalf Of The National GBL Class

115. The Plaintiffs repeat, reiterate and allege each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

116. The Plaintiffs and National GBL Class Members are consumers.

117. The Plaintiffs and National GBL Class Members are end users and intended beneficiaries of Defendant's services.

118. Defendant is a provider of residential loan services to the consuming public and their conduct affects similarly situated consumers and has broad impact on consumers at large.

119. The Defendant who is a debt collector engages in consumer-oriented conduct.

120. Section 349 of the New York State General Business Law ("GBOL") declares any "deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this State" to be unlawful.

121. Section 349(g) of the New York State General Business Law provides that Section 349 "shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this State."

122. Section 349(h) of the New York General Business Law provides a private right of action to any person injured by reason of a violation of that section, and authorizes the Court to award compensatory damages, statutory damages, and reasonable attorneys' fees to the prevailing Plaintiffs.

123. The Defendant knowingly misrepresented and intentionally omitted material information by purposely failing to notify the borrowers of their right to cancel their PMI then purposely collected PMI fees that were unwarranted and then deceived the borrowers regarding

- 22 -

the nature of the PMI fees that would be assessed to borrowers' accounts for the unneeded, fictitious and fraudulent services.

124.    Despite knowledge that these PMI services were unneeded, Defendant continued to collect them from the Plaintiff and Class Members.

125.    Defendant acted deceptively by presenting borrowers with mortgage agreements such as the Security Agreement, that misleadingly and deceptively indicate that borrowers will not be charged for unneeded or fictitious services.

126.    Defendant did so, despite knowledge that borrowers would be automatically and repeatedly charged for unneeded or fictitious services.

127.    Defendant knew that PMI fees were being assessed without regard to whether the services were needed.

128.    Defendant's deceitful scheme, as more fully set forth above, was false, unlawful, misleading and/or likely to deceive within the meaning GBOL section 349.

129.    Defendant's conduct caused and continued to cause substantial injury to Plaintiff and other Class members and Plaintiff has suffered injury in fact and has lost money as result of Defendant's unfair conduct.

130.    As set forth above, Defendant's scheme included charging unreasonable, unnecessary, fictitious, excessive and false PMI fees to Plaintiff and Class members occurring in significant part in New York, which constitutes unlawful, unfair and deceptive business practices under the GBOL.

131.    The Defendant's deceptive and fraudulent scheme of charging, unnecessary PMI fees while concealing said practice is purposeful and being practiced en masse to similarly situated consumers.

132.    As a result of the foregoing, Plaintiff and National GBL Class members are entitled to their actual damages and/or an award of fifty dollars per class member, treble damages, punitive damages, compensatory damages, equitable and declaratory relief, injunctive relief and an award of their reasonable attorney's fees and costs.

## SIXTH CAUSE OF ACTION

### Violation of the New York General Bus. Law §§ 349
### On Behalf Of The New York GBL Class

133.    The Plaintiff repeats, reiterates and alleges each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

134.    The Plaintiff and New York GBL Class Members are consumers.

135.    The Plaintiff and New York GBL Class Members are end users and intended beneficiaries of Defendant's services.

136.    Defendant is a provider of residential loan services to the consuming public and their conduct affects similarly situated consumers and has broad impact on consumers at large.

137.    The Defendant who is a debt collector engages in consumer-oriented conduct.

138.    Section 349 of the New York State General Business Law ("GBOL") declares any "deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this State" to be unlawful.

139.    Section 349(g) of the New York State General Business Law provides that Section 349 "shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this State."

140.    Section 349(h) of the New York General Business Law provides a private right of action to any person injured by reason of a violation of that section, and authorizes the Court to

award compensatory damages, statutory damages, and reasonable attorneys' fees to the prevailing Plaintiffs.

141.    The Defendant knowingly misrepresented and intentionally omitted material information regarding the nature of the fees that would be assessed to borrowers' accounts for unneeded, fictitious, and fraudulent services, including PMI fees.

142.    Despite knowledge that these services were unneeded, Defendant concealed the fact that borrowers would automatically and repetitively be charged for such services.

143.    Defendant acted deceptively by presenting borrowers with mortgage agreements such as the Security Agreement, that misleadingly and deceptively indicate that borrowers will not be charged for unneeded or fictitious services.

144.    Defendant did so, despite knowledge that borrowers in default would be automatically and repeatedly charged for unneeded or fictitious services.

145.    Defendant knew that PMI fees were being assessed without regard to whether the services were needed.

146.    Defendant's deceitful scheme, as more fully set forth above, was false, unlawful, misleading and/or likely to deceive within the meaning GBOL section 349.

147.    Defendant's conduct caused and continued to cause substantial injury to Plaintiff and other Class members and Plaintiff has suffered injury in fact and have lost money as result of Defendant's unfair conduct.

148.    As set forth above, Defendant's scheme included charging unreasonable, unnecessary, fictitious, excessive and false PMI fees to Plaintiff and Class members occurring in New York, which constitutes unlawful, unfair and deceptive business practices under the GBOL.

149.    Defendant knew that the Plaintiff's PMI should have been cancelled yet the

Plaintiff was were unlawfully billed for the monthly fees by Defendant as part of the scheme.

150.     The Defendant's deceptive and fraudulent scheme of charging unreasonable, unnecessary, and false PMI fees while concealing said practice is purposeful and being practiced en masse to similarly situated consumers.

151.     As a result of the foregoing, Plaintiff and New York GBL Class members are entitled to their actual damages and/or an award of fifty dollars per class member, treble damages, punitive damages, compensatory damages, equitable and declaratory relief, injunctive relief and an award of their reasonable attorney's fees and costs.

## SEVENTH CAUSE OF ACTION

### Breach of Contract
### On Behalf Of The National Contract Class

152.     The Plaintiff repeats, reiterates and alleges each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

153.     Plaintiff brings this claim for relief on behalf of herself and the members of the National Class.

154.     Plaintiff entered into a standard loan agreement that typically provides, *inter alia*, that Defendant may charge fees for services performed for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument.

155.     Members of the National Contract Class entered into mortgage agreements with substantially similar language that precludes Defendant from assessing fees for false, unneeded or unnecessary fees.

156.     According to the agreements the charges must be for the purpose of protecting the Lender's interest in the property not for generating fees for the lender.

157.     The charges must also be for services that were necessary.

158.    Defendant breached these mortgage agreements by assessing fees against the Plaintiff and the National Contract Class members for PMI fees that were not necessary and should have been cancelled.

159.    As a result of the breach of contract Defendants have caused and continue to cause injury to the Plaintiff and the National Contract Class members.

160.    Defendant also breached their duty of good faith and fair dealing as well as New York State Banking Laws and New York State Department of Financial Services by assessing fees for unneeded and unnecessary services.

161.    As a result of the foregoing, Plaintiff and the National Contract Class members are entitled to their actual damages, punitive damages, and an award of their reasonable attorney's fees and costs.

162.    As a result of the foregoing, Plaintiff and the National Contract Class members are also entitled to injunctive, equitable, and declaratory relief, including an injunction barring Defendant from committing future breaches of its contractual obligations.

## EIGHTH CAUSE OF ACTION

### Breach of Contract
### On Behalf Of The New York Contract Class

163.    The Plaintiff repeats, reiterates and alleges each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

164.    Plaintiff brings this claim for relief on behalf of herself and the members of the New York Contract Class.

165.    Plaintiff entered into an standard loan agreement that typically provides *inter alia* that Defendant may charge for fees for services performed for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to,

attorneys' fees, property inspection and valuation fees."

166.    Members of the New York Contract Class entered into mortgage agreements with substantially similar language that precludes Defendant from assessing fees for false, unneeded or unnecessary fees.

167.    According to the agreements the charges must be for the purpose of protecting the Lender's interest in the property not for generating fees for the lender.

168.    The charges must also be for services that were necessary.

169.    Defendant breached these mortgage agreements by assessing fees against the Plaintiff and the New York Contract Class members for PMI services that were not necessary and subject to cancellation.

170.    As a result of this breach of contract Defendant has caused and continue to cause injury to the Plaintiff and the New York Contract Class members.

171.    Defendant also breached its duty of good faith and fair dealing as well as New York State Banking Laws and New York State Department of Financial Services by assessing fees that were unwarranted and unnecessary.

172.    Defendant violated 3 N.Y.C.R.R. 419.10(b), which provides that: "[a] Servicer may only collect a fee if the fee is for services actually rendered and one of the following conditions is met: (1) the fee is expressly authorized and clearly and conspicuously disclosed by the loan instruments and not prohibited by law; (2) the fee is expressly permitted by law and not prohibited by the loan instruments; or (3) the fee is not prohibited by law or the loan instruments and is a reasonable fee for a specific service requested by the borrower that is assessed only after clear and conspicuous disclosure of the fee is provided to the borrower and the borrower expressly consents to pay the fee in exchange for the services."

173.     Defendant violated 3 N.Y.C.R.R. 419.14(a), which provides that: "[a] Servicer is prohibited from…Engaging in unfair or deceptive business practices or misrepresenting or omitting any material information in connection with the servicing of the loan, including, but not limited to, misrepresenting the amount, nature or terms of any fee or payment due or claimed to be due on a loan, the terms and conditions of the servicing agreement or the borrower's obligations under the loan."

174.     As a result of the foregoing, Plaintiff and the New York Contract Class Members are entitled to their actual damages, punitive damages, and an award of their reasonable attorney's fees and costs.

175.     As a result of the foregoing, Plaintiff and the New York Contract Class Members are also entitled to injunctive, equitable, and declaratory relief, including an injunction barring Defendant from committing future breaches of its contractual obligations

## NINTH CAUSE OF ACTION

### Unjust Enrichment

176.     The Plaintiff repeats, reiterates and alleges each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

177.     By its wrongful acts and omissions of material facts, the Defendant was unjustly enriched at the expense of the Plaintiff.

178.     The Defendant kept the Plaintiff's fourteen PMI payments even though the Plaintiff's PMI should have been cancelled.

179.     At all relevant times, the Defendant knew that borrowers such as the Plaintiff's PMI was subject to cancellation but still collected PMI fees and such fees were not necessary to protect or defend the mortgage agreement.

- 29 -

180.    As a result of its actions, the Defendant was unjustly enriched to the extent that it wrongly collected PMI fees after the cancellation period and that the insurance was an unnecessary insurance or service at the expense of the Plaintiff and Class Members.

181.    It would be inequitable and unconscionable for the Defendant to retain the profit, benefit, and other compensation it obtained from their fraudulent, deceptive and misleading conduct alleged herein.

182.    As a result of the foregoing, Plaintiff and the National Contract Class members are entitled to their actual damages, punitive damages, and an award of their reasonable attorney's fees and costs.

183.    As a result of the foregoing, Plaintiff and the National Contract Class Members are also entitled to injunctive, equitable, and declaratory relief, including an injunction barring Defendant from committing future breaches of its contractual obligations.

## TENTH CAUSE OF ACTION

### Negligence

184.    The Plaintiff repeats, reiterates and alleges each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

185.    The Defendant had a duty to notify the Plaintiff that her PMI was subject to cancellation and to cancel her PMI accordingly and not to collect unnecessary or unwarranted fees upon her account ant that of the eligible Class Members.

186.    The Defendant breached that duty by failing to notify, collecting unnecessary PMI fees, assessing mortgage accounts for unwarranted and unnecessary fees.

187.    The Defendant's actions caused the Plaintiff and the eligible Class Members to accrue unnecessary fees and to accumulate more debt.

188.   As a result of the foregoing, Plaintiff and the National Contract Class members are entitled to their actual damages, punitive damages, and an award of their reasonable attorney's fees and costs.

189.   As a result of the foregoing, Plaintiff and the National Contract Class members are also entitled to injunctive, equitable, and declaratory relief, including an injunction barring Defendant from committing future breaches of their contractual obligations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests on behalf of themselves and all others similarly situated, that the Court to enter judgment against Defendant, as follows:

a)   Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as the representatives of the Class, and designating their counsel as counsel for the Class;

b)   A declaration that Defendant has committed the violations alleged herein;

c)   An award of actual damages;

d)   An award of punitive damages;

e)   An award of treble the amount of damages suffered by Plaintiff and members of the Class as proved at trial plus interest and attorney's fees and expenses pursuant to 18 U.S.C. § 1962(c) and (d);

f)   An award of statutory damages pursuant to 12 U.S.C. 4901, *et seq*;

g)   An award of Compensatory damages;

h)   Ordering Defendant to disgorge the payments and profits it wrongfully obtained at the expense of Plaintiff and class members;

i)   Ordering that restitution be made to Plaintiff and class members for Defendant's unjust enrichment;

j)   Ordering that an accounting be made by Defendant of its wrongfully obtained payments and profits;

k)   An injunction along with equitable declaratory relief preventing Defendant from engaging in future fraudulent practices as permitted by law or equity, including directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution; and disgorgement of all monies acquired by Defendant by means of any act or practice declared by the Court to be wrongful;

l)   Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

m)  For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demand a trial by jury on all claims so triable as a matter of right.

Dated: Carmel, New York
May 21, 2020

Respectfully Submitted,

THE LAW OFFICE OF RICK S. COWLE, P.C.

By:     _/s/ Rick S. Cowle_
Rick S. Cowle, Esq.
*Counsel for the Plaintiff and the Class*
18 Fair Street
Carmel, New York 10512
Tel: (845) 225-3026
Fax: (845) 225-3027
RCowlelaw@comcast.net